[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15086
_____

D.C. Docket No. 1:08-cv-02686-RWS

CRISTOBAL D. RAMIREZ,

Plaintiff - Appellant,

versus

SECRETARY, U.S. DEPARTMENT OF
TRANSPORTATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 12, 2012)

Before EDMONDSON and WILSON, Circuit Judges, and VINSON,[*] District
Judge.

_____

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

VINSON, District Judge:

The plaintiff in this Title VII employment discrimination case, Cristobal D. Ramirez, represented himself in district court. He survived summary judgment (in part) and proceeded to trial. At the conclusion of the presentation of his evidence, the defendant, Secretary of the U.S. Department of Transportation ("DOT), orally moved for judgment as matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The district court granted the motion on the sole ground that Ramirez's claim was time-barred because he did not contact an Equal Employment Opportunity ("EEO") Counselor within forty-five days of the alleged discrimination. Ramirez, still appearing in the case pro se, appealed to this court, where he was appointed counsel. Upon review, and with the benefit of counseled briefing and oral argument, we reverse.

## I.

The administrative requirements and legal standards for maintaining a Title VII case feature prominently in this appeal and overlap the facts and procedural history of the case. Therefore, to put the case in its proper context, we will begin by briefly discussing those administrative requirements and legal standards.

Title VII prohibits employers --- including the federal government --- from discriminating against employees on the basis of race or national origin. 42 U.S.C.

2

§ 2000e-16(a). Before bringing a Title VII action in court, a federal employee must first seek relief from the agency where the alleged discrimination occurred. Brown v. General Servs. Admin., 425 U.S. 820, 832, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976). "This requirement is not a technicality; '[r]ather, it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel primary responsibility for maintaining nondiscrimination in employment.'" Grier v. Secretary of Army, 799 F.2d 721, 724 (11th Cir. 1986) (quoting Kizas v. Webster, 707 F.2d 524, 544 (D.C. Cir. 1983)). In accordance with the congressional design, the Equal Employment Opportunity Commission ("EEOC") has adopted regulations setting forth the procedure that employees must follow in presenting discrimination claims to federal agencies. See 29 C.F.R. §§ 1614.101 et seq. These regulations provide, inter alia, that an aggrieved employee must "initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." 29 C.F.R. § 1614.105(a)(1). The purpose of this counselor-contact requirement is to allow the agency an opportunity to investigate the claim internally and "try to informally resolve the matter." See 29 C.F.R. § 1614.105(a). "Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred . . . ." Shiver v. Chertoff, 549 F.3d 1342, 1344 (11th Cir. 2008). However,

3

the 45-day time limit is not jurisdictional; rather, it functions like a statute of limitations, and, "like a statute of limitations, [it] is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982). The regulations thus provide that the 45-day rule "shall" be extended if the employee "was not notified of the time limits and was not otherwise aware of them . . . ." See 29 C.F.R. § 1614.105(a)(2).

If informal attempts to resolve the complaint are unsuccessful, the employee may file a formal complaint with the agency. 29 C.F.R. § 1614.106. If the agency dismisses the complaint for failure to comply with any of the time limits provided for in the regulations, including the 45-day rule [29 C.F.R. § 1614.107(a)(2)], the agency will issue a final decision and that decision may be appealed to the EEOC. 29 C.F.R. § 1614.110(b). A decision by the EEOC on appeal is final unless either party files a motion for reconsideration within 30 days. 29 C.F.R. § 1614.405(b). Throughout the administrative process, the employee must provide all relevant and available information so the agency and the EEOC have notice of the claim being pursued and can properly investigate and consider it. See Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999).

An employee who has completed the administrative process and obtained an unfavorable final decision may bring a Title VII action in district court, where he

4

is entitled to a <u>de novo</u> review of his complaint. <u>See</u> <u>Moore v. Devine</u>, 780 F.2d 1559, 1562 (11th Cir. 1986). To prevail, the employee must first establish a <u>prima facie</u> case and show that (1) he belongs to a protected class; (2) he suffered an adverse job action; (3) the employer treated similarly situated employees ("comparators") outside his protected class better; and (4) he was qualified for the job. <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997).

## II.

We review the grant of a Rule 50(a) motion for judgment as matter of law <u>de novo</u>. <u>Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.</u>, 162 F.3d 1290, 1308 (11th Cir. 1998). In doing so, we view the evidence in a light most favorable to the non-moving party, and we will affirm only if "'reasonable people could not arrive at a contrary verdict.'" <u>See</u> <u>id.</u> (quoting <u>Pulte Home Corp. v. Osmose Wood Preserving, Inc.</u>, 60 F.3d 734, 739 (11th Cir. 1995)).

The following facts are derived from the evidence admitted during the trial and from Ramirez's deposition testimony. Consistent with the foregoing standard of review, these facts are viewed in the light most favorable to Ramirez.[1]

---

[1] Selected portions of Ramirez's deposition testimony were referenced to, and quoted, by both sides during trial, but the transcript was not actually admitted into evidence. We recognize that motions for judgment as matter of law must be decided at trial (and reviewed on appeal) "on the evidence that has been admitted." <u>See</u> <u>Bill Johnson's Restaurants, Inc. v. N.L.R.B.</u>, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). Thus, to be clear, we use certain of the facts taken from Ramirez's deposition testimony (but which were not referenced at trial) merely

5

Ramirez is Hispanic and was born in the Dominican Republic. He immigrated to the United States in or about 1977 (after graduating from high school) and joined the Army the same day that he arrived. While in the Army, he was an infantryman and served several tours overseas. In 1981, after sustaining duty-related injuries, he was assigned to the Robert Gray Army Radar Tower in Fort Hood, Texas, where he became an air traffic controller. The Fort Hood tower is a large and very complex "joint-use" radar facility that handles both civilian and military air traffic. After being honorably discharged from the Army in December 1985, Ramirez was classified as a disabled veteran and immediately hired by the United States Department of Defense ("DOD") as a civilian air traffic controller, a position that he still holds today. He was assigned to Fort Hood, where he worked in the same building as he had in the military. About ten years later, in 1996, he began to apply for air traffic controller positions within the Federal Aviation Administration ("FAA"), an agency of the DOT. He wanted a position in Miami so that he could be closer to his family.

In May 2000, the DOT issued an announcement that it was hiring air traffic controllers in Miami. Ramirez applied for the job under this announcement, which the parties have referred to throughout this litigation as the "A215 announcement,"

---

for background --- not evidentiary --- purposes.

6

and he was put on the "selection list." At the time he applied for this job, Ramirez was not aware that there was a separate announcement for essentially the same air traffic controller position at the Miami facility, which has been generally referred to throughout this case as the "VRA12 announcement."[2]

Several months passed and no one from the DOT contacted Ramirez about his application. After waiting months but getting no response, he called the DOT. He spoke with someone there who told him that there was a "hiring freeze" while the agency was "waiting on funding." Undeterred, Ramirez continued to call the DOT every month to check on the status of his application and provide updated performance evaluations when they became available. In April or May 2001, he learned from a friend who worked as a trainer at the Miami facility that there was no hiring freeze and, in fact, that new employees were being hired "all the time."

---

[2] The distinction between these two announcements is a significant issue in this case and will be discussed further infra. We emphasize here, however, as noted in the text above, that the announcements were essentially for the same job, and they shared the same "KG" (these letters refer to the location and career level/pay band, respectively). Earlier in the case --- most notably, at the summary judgment stage --- there was a lot of confusion and disagreement about whether the announcements were for two different positions. On the first day of trial, the parties told the district court that they now "absolutely" agreed that the announcements were just "two vehicles to get to the same place" and, therefore, "it doesn't matter which announcement . . . [Ramirez] would have been selected from, [he] would have received the same position, the air traffic controller KG position." The only difference in the announcements appears to be that the A215 announcement (with higher experience and skills requirements) was open to anyone who chose to apply, whereas the VRA12 announcement (with essentially entry-level skills requirements) was a Veterans Readjustment Appointment, but the underlying positions were, according to the parties, "the same position."

Upon hearing this, Ramirez contacted the Hispanic Coalition of Federal Aviation Employees ("Coalition") --- a group within the FAA that advocates for minorities at the agency --- and asked them to check on his application. Shortly thereafter, the Coalition discussed the matter with agency officials during a previously-scheduled Southern Region Managers' meeting in June 2001.

In or about September 2001, three months after the Coalition spoke on his behalf, the DOT offered Ramirez an air traffic controller position in Miami, and he quickly accepted. There were a lot of pre-employment forms and paperwork sent along with the contract, and he did not notice at the time that the offer was made under the VRA12 announcement, and not the A215 announcement. Nor did he realize (until several days later, when he looked more closely at the paperwork) that the salary was lower than he expected. Indeed, the offer was for less than he was earning at the DOD. Ramirez researched the applicable pay rules and spoke with people in the Finance Department and Human Resources. Based on what he read and what they told him, he became convinced that the DOT had incorrectly calculated his salary. Over the next several months --- before he started the new position --- he and Stan Wayland (the DOT official responsible for processing his application) spoke numerous times about the salary. Ramirez repeatedly asked ("practically begg[ed]") Wayland to look into the issue and recalculate his salary,

8

but Wayland kept telling him "your pay is set" and "that's what your pay is going to be." Because he was not satisfied with the pay, Ramirez wrote to Wayland on July 12, 2002, declining the position.[3]

Even after he turned the job down, Ramirez continued to research the pay rules that applied to air traffic controllers transferring to the DOT from the DOD. In August 2003, about one year after he declined the position, he learned via a Freedom of Information Act inquiry that several non-Hispanic air traffic controllers who transferred from the DOD received the higher salary that he was denied. The next month, September 2003, Ramirez contacted an EEO Counselor and complained that he had been discriminated against with respect to his pay (the "pay claim"). When the informal grievance process did not resolve his claim, he filed an official complaint. The DOT dismissed the complaint as it concluded that Ramirez did not contact the EEO Counselor within 45 days of when he should have first suspected discrimination, which the DOT found was July 2002 (i.e., when he complained to Wayland about the pay and declined the position). Ramirez appealed to the EEOC on the ground that he did not know about the 45-

---

[3] Ramirez was also unhappy with the job offer because it required him to attend training classes that he believed were beneath his experience level. He testified during trial that this was another reason he declined the position, because they were "sending me to learn how to become an air traffic controller, back to the school. I was already in a ten-speed bike, now they want me to go to a tricycle, baby tricycle."

day time limit. The EEOC agreed with Ramirez. It expressly found that there was "nothing in the record to show that [Ramirez] either knew or should have known the time limits for initiating the EEO process following a discriminatory event." See Ramirez v. Department of Transp., Appeal No. 01A41793, 2004 WL 1396966, at *2 (E.E.O.C. June 9, 2004). As this was tantamount to finding that the claim was timely, the EEOC held that dismissal "for untimely EEO Counselor contact [was] improper" and it remanded the case to the DOT for further proceedings. Id. The DOT did not appeal this ruling or move for reconsideration; instead, it began an investigation into the merits of Ramirez's pay claim and found that there was no discrimination. It was at some point during this administrative process that Ramirez discovered that the position the DOT had previously offered to him was made under the VRA12 announcement, and not the A215 announcement. As will be further discussed infra, and as indicated in note 2, supra, the misunderstanding about these two positions is highly significant in this case and led to considerable confusion in the district court.

While his complaint was on remand, Ramirez requested a hearing before an Administrative Law Judge ("ALJ"), and he sought leave to amend his complaint to include a claim regarding his not being offered the position pursuant to the A215 announcement (the "non-selection claim"). The ALJ granted Ramirez's request for

10

a hearing, but denied as untimely the request to amend his complaint to include the non-selection claim.[4] After the hearing, the ALJ concluded that Ramirez had not established a prima facie case with respect to the pay claim. Ramirez appealed to the EEOC, which affirmed the ALJ initially, in 2007, and on reconsideration, in 2008. See Ramirez v. Department of Transp., Appeal No. 0120055306, 2007 WL 556789 (E.E.O.C. Feb. 15, 2007), reconsideration denied by, No. 0520070364, 2008 WL 382192 (E.E.O.C. Feb. 4, 2008).

Ramirez thereafter timely filed a civil action against the DOT in the United States District Court for the Western District of Texas, pro se, alleging race and national origin discrimination. On the DOT's motion, the case was transferred to the Northern District of Georgia, where (after discovery closed) the DOT moved for summary judgment. It argued, among other things, that summary judgment was appropriate on the non-selection claim since Ramirez did not contact an EEO

---

[4] The ALJ denied Ramirez's request to amend his complaint on the ground that Ramirez did not contact an EEO Counselor within forty-five days of when he knew or reasonably should have known of the factual basis for his non-selection claim. We agree with Ramirez that it was error for the ALJ to apply the 45-day rule to his motion to amend. The regulations provide that, after a hearing is requested, a complainant may move to amend his complaint to include "issues or claims like or related to those in the complaint." 29 C.F.R. § 1614.106(d). It is now apparent that the non-selection claim was inarguably related to the pay claim. The EEOC has explained (and case law confirms) that a claim "like or related to" the original claim is not subject to the 45-day counseling requirement. See, e.g., Weber v. Battista, 494 F.3d 179, 183 (D.C. Cir. 2007) (explaining that if a new claim is related to the original claim "'[t]here is no requirement that the amendment be subject to counseling'") (quoting Core v. Brownlee, Appeal No. 01A34550, 2004 WL 189570, at *1 (E.E.O.C. Jan. 23, 2004)).

11

Counselor within 45 days of being on notice of a possible discrimination claim. As for the pay claim, the DOT assumed at the time that the A215 and VRA12 announcements were for two different jobs [see note 2, supra]; it believed the former was for an air traffic controller specialist position (which carried a higher salary), while the latter was for a "developmental" position (which carried a lower salary). The DOT therefore insisted that there was a reason why Ramirez was offered less pay: "he was not an A215 selectee, but rather a VRA12, developmental selectee."

The DOT's summary judgment motion was referred to the Magistrate Judge on the case. The Magistrate Judge issued a 33-page Report and Recommendation ("Report"). The Report recommended that summary judgment be denied on the non-selection claim because there were disputed issues of material fact as to when Ramirez should have first known that he had a non-selection discrimination claim under the A215 announcement and, also, whether he had even been aware of the 45-day rule.[5] With respect to the pay claim, the Report noted that to the extent Ramirez was alleging that his salary was incorrectly calculated based on unlawful

---

[5] Although the Report suggested that there was a disputed issue of fact as to whether Ramirez knew about the 45-day rule, the Magistrate Judge quoted directly from the EEOC's ruling which had found "'nothing in the record to show that [he] either knew or should have known the time limits for initiating the EEO process following a discriminatory event.'"

12

discrimination, there was no evidence in the record to support the claim. However, inasmuch as Ramirez was alleging that he had been selected for the lower-paying "developmental" position due to his race or national origin, the Report concluded "he may be able to establish a discriminatory pay claim." The Magistrate Judge thus recommended that summary judgment be <u>granted</u> against Ramirez on the pay claim, to the extent the claim was not "intertwined with [the] non-selection claim." The district court thereafter adopted the Report, and the case proceeded to a two-day jury trial.

As previously noted, by the time the case got to trial, the parties had come to agree that the A215 and VRA12 announcements were merely different notices for the same position, and the DOT advised the district judge of this "newly presented" issue on the first morning of trial. This appears to have changed the complexion of the entire case, as it impacted both Ramirez's primary claim (that the DOT did not offer him the particular position that he had applied for), and the DOT's defense (that Ramirez was offered lower pay because he was hired for a "developmental" position). It thus called into question the summary judgment ruling, as it arguably undercut the basis for the prior dismissal of the pay claim. This caused significant confusion about the claims that still remained viable, particularly in light of some language in the summary judgment order (that the

district court conceded was "a little vague") which suggested that the two claims were "intertwined." The DOT acknowledged that its former position on the job announcements caused "a lot of confusion," and it "apologize[d] for that." The DOT asked the district court for "some additional guidance" on what claims remained in the case and what the jury would be asked to decide. The district judge replied that throughout the case, and in preparing for trial, he had been "struggling" with "a lot of smoke" caused by the confusion over the announcements and their impact on Ramirez's claims.[6] He then addressed Ramirez directly:

> [T]he claim that is still in this case, based upon the rulings that have been made to this point, is a claim that you were denied the opportunity for this position based upon race or national origin. If they show, which it appears we all [now] agree, that you were offered . . . that position, then that destroys any claim of discrimination in terms of the offer of the position.
>
> * * *
>
> So then what it does leave open is the question of why did they calculate the pay at this rate instead of giving you the benefit that you contend you're entitled to

---

[6] We understand the district court's confusion as the issue is still unclear, even on appeal. On one hand, as noted, the parties expressly and "absolutely" agreed at the outset of trial that the two announcements were merely different notices for the same job. On the other hand, Ramirez testified on direct examination that the position advertised under the VRA12 announcement was "for less money" than the A215 announcement, and it required a considerable amount of basic training at the FAA academy that the A215 announcement did not.

14

> coming out of the Department of Defense? Did they
> properly calculate the pay that you would receive in this
> position based on your experience, based upon the fact
> that you already had a position in the Department of
> Defense? That is the question that it seems to me is in
> your mind that you've been trying to get an answer to
> and that you are arguing about, but that is a question that
> is not any longer in the case.

Ultimately, the judge explained that while he believed the pay claim was no longer in the case, and while the non-selection claim was all but "destroy[ed]" because the parties now agreed that the DOT offered Ramirez the position that he was seeking, Ramirez had one claim left: "The fact that they passed over you, while they may have offered you the job later, they passed over you . . . [and offered] the positions to others when you should have gotten it, that is the case that is still here[.]" It was this very narrow and specific "delay in hiring" claim, as the district court called it, that the jury would be called upon to consider.

During the trial, Ramirez introduced several documents into evidence that he had obtained from the DOT which, he believed, showed "exactly what happened as far as the position and being overpassed." These documents reflected that although Ramirez was included on the original selection list for the position under the A215 announcement, his name (and only his name) was "scratched" out. The documents further showed that there were several non-Hispanic applicants

15

who were left off the original selection list and not recommended for hire specifically because they lacked the necessary qualifications and experience (particularly with radar). And yet, they were all hired before Ramirez.

At the conclusion of Ramirez's case, the DOT orally moved for judgment as a matter of law under Rule 50(a). As grounds for the motion, the DOT made three arguments: (1) Ramirez did not establish a prima facie case on the "delay in hiring" (as the district judge had characterized it) claim because he "has not offered any comparators"; (2) he failed to adequately exhaust his administrative remedies on the "delay in hiring" claim as there was no evidence "that [claim] was reviewed or investigated below at the EEO"; and (3) his contact with the EEO Counselor in September 2003 was "well outside the 45-day period," as he knew or reasonably should have known of the discrimination back in 2001.

In considering the DOT's first argument, the district judge referenced the evidence at trial which showed that certain of the applicants who were selected ahead of Ramirez "couldn't pass the training because they had never even been around radar before." The Rule 50(a) motion was thus denied on the first ground because, as the district judge explained, "[t]here's evidence here that there were people who were grossly unqualified who were then selected ahead of him, [they] couldn't pass the training because they didn't have the background they needed,

16

and [there is] evidence that they were white [or] non-Hispanic." The district judge

proceeded to consider and reject the DOT's second argument as well, finding that

Ramirez adequately exhausted his administrative remedies as "[i]t is my view that

the claim of failure to hire is broad enough to have put the defense on notice of a

delay in hiring claim." After stating that "the problem is timing," the district judge

then considered the DOT's third and final argument. He told Ramirez from the

bench:

> [Y]ou were on notice [in 2001] that hiring was taking
> place --- that you had been misled by someone. You
> were on notice that it's time to inquire. Someone has told
> you there's a hiring freeze. Your buddy tells you, there is
> no hiring freeze, they're hiring folks left and right . . .
> [yet] you did not file a claim until 2003. You're
> supposed to file within 45 days. That's not a timely
> claim.

The district court thus granted the DOT's motion and entered judgment as matter

of law in its favor, solely and exclusively "on a timeliness basis."

### III.

Ramirez appeals the district court's judgment. He contends that he was not

aware of the 45-day rule at the outset of the administrative process, as the EEOC

previously found; and since the DOT did not challenge the EEOC's finding on that

point either factually or legally, the DOT was bound by that finding and waived

17

the right to argue untimeliness.[7] Before addressing this argument, however, we must consider the DOT's request that we not reach it because Ramirez did not raise the argument before the trial judge in response to the DOT's oral Rule 50(a) motion. The DOT is essentially arguing that Ramirez has "waived this waiver argument."

*A. Waiver Rule*

It is well-settled that we will generally refuse to consider arguments raised for the first time on appeal. Federal Deposit Ins. Corp. v. 232, Inc., 920 F.2d 815, 817 (11th Cir. 1991); see also United States v. Godoy, 821 F.2d 1498, 1504 (11th Cir. 1987) ("The general rule, of course, is that an appellate court will not consider a legal issue unless it was presented to the trial court."). This rule applies, as here, to waiver arguments that could have been raised in opposition to Rule 50 motions. Cf. Howard v. Walgreen Co., 605 F.3d 1239, 1243-44 (11th Cir. 2010) (plaintiff "forfeited his right to raise waiver on appeal" by not raising the argument in the district court in response to Rule 50(b) motion for judgment as a matter of law).

---

[7] Ramirez also contends that there was a factual dispute (which should have been left for the jury to decide) regarding when he should have first learned that his non-selection was due to discrimination, and whether his EEO Counselor contact was timely thereafter. Thus, while the DOT argues (and the district court agreed) that Ramirez should have realized he had a potential claim as early as 2001 (when he learned there was no hiring freeze), Ramirez argues that he did not know that he had a potential claim until August 2003 (when he learned via the Freedom of Information Act that non-Hispanic applicants were offered the job at the salary he was denied).

18

Our reluctance to consider waived legal arguments is "merely a rule of practice," however, and is not absolute. Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360 (11th Cir. 1984). The decision of whether to consider an argument that was not raised in the district court below is left primarily to the discretion of the appellate court, to be exercised on the particular facts of the individual cases. Id. As we have explained:

> In the exercise of that discretion, appellate courts may pass on issues not raised below if the ends of justice will best be served by doing so. Specifically, the court will consider an issue not raised below in the district court if it involves a pure question of law, and refusal to consider it would result in a miscarriage of justice.

Caban-Wheeler v. Elsea, 904 F.2d 1549, 1557 (11th Cir. 1990), abrogated on other grounds by, St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Thus, where the party seeking consideration of an argument not raised in the district court "has raised no new factual questions" and the record "supports its legal argument," we have held that "refusal to consider that argument could result in a miscarriage of justice." Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 990 (11th Cir. 1982); Federal Deposit Ins. Corp., 920 F.2d at 818 (holding same). We have also considered arguments not raised in the court below "'where the interest of substantial justice is at stake'";

19

"'where the proper resolution is beyond any doubt'"; and where the argument at issue involves "significant questions of general impact or of great public concern." Dean Witter Reynolds, Inc., 741 F.2d at 361 (multiple citations omitted).

On the specific facts of this case, it could result in a "miscarriage of justice" if we refused to consider Ramirez's argument. While we recognize that being pro se does not, by itself, excuse a failure to raise an argument below [see Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (noting pro se pleadings are viewed under a "less stringent standard than pleadings drafted by attorneys . . . [but] issues not raised below are normally deemed waived")], it would defeat the "interests of substantial justice" to apply the waiver rule to a pro se litigant on an issue that was decided in his favor both in the administrative proceedings --- which then became final as a matter of law --- and on summary judgment in the civil case, merely because he failed to orally re-contest the issue (a third time) in response to the defendant's mid-trial Rule 50(a) motion for judgment as matter of law. In light of this particular background, and because we conclude that Ramirez's argument is purely a legal one that does not raise new factual questions and is amply supported by the record and case law (as detailed below), we will exercise our discretion and consider the argument to avoid a possible miscarriage of justice.

20

*B. Discussion*

As previously discussed, when Ramirez filed his administrative complaint, the DOT initially dismissed the complaint as untimely on the ground that Ramirez did not make his initial contact with an EEO Counselor within 45 days. On appeal to the EEOC, Ramirez argued that he "did not know and was not aware of the 45-day time limit in which he was required to contact an EEO Counselor to begin the EEO complaints process." The EEOC agreed and held that dismissal on timeliness grounds was improper, as there was "nothing in the record to show that [Ramirez] either knew or should have known the time limits for initiating the EEO process following a discriminatory event." Significantly, the DOT did not challenge this ruling. Rather, it accepted Ramirez's complaint, investigated his allegations, and denied him relief on the merits. On these facts, we conclude that the DOT and the district court were bound by the EEOC's timeliness finding.[8]

---

[8] The DOT contends that while the EEOC did make a finding regarding timeliness, "that finding only related to [Ramirez's] disparate pay claim" (which was the claim before the EEOC at that time), and "not the [non-selection] claim that was before the district court" at the time of trial. The precise nature of the claim before the EEOC at that specific point in time is irrelevant, however, particularly since (as the district court observed) the two claims are "intertwined." See also note 4, supra. What matters is whether Ramirez knew about the 45-day time limit when the administrative process began. Id. The EEOC found --- and the district court also confirmed on summary judgment --- that he "'did not know and was not aware of the 45-day time limit in which he was required to contact an EEO Counselor to begin the EEO complaints process.'" If he was unaware of the 45-day rule, it necessarily follows that when the administrative process began he was unaware that he had to bring any claim (pay claim or non-selection claim) within its time limit.

21

The Second Circuit confronted this issue on nearly identical facts. In

Briones v. Runyon, 101 F.3d 287 (2d Cir. 1996), a postal employee, Nicanor

Briones, filed an informal complaint alleging discrimination. On December 11,

1991, the Postal Service dismissed the complaint "as untimely based on his failure

to request EEO counseling within thirty days of the alleged discriminatory

incident." Id. at 289.[9] The employee appealed to the EEOC, which vacated and

remanded because there was no evidence that the Postal Service "had informed

him of EEO procedures." Id. The Postal Service "neither appealed the EEOC's

determination nor refused to proceed, but, rather, began its investigation" and

eventually denied the claim on its merits. Id. at 289-91. When the employee

brought a Title VII case in federal court, "[t]he Postal Service raised the same

argument that it had raised in its original final agency decision of December 11,

1991: that Briones had failed to contact an EEO counselor within thirty days of the

alleged discriminatory incident." Id. at 289. The district court agreed and granted

judgment for the Postal Service.

In reversing, the Second Circuit relied heavily on Girard v. Rubin, 62 F.3d

1244 (9th Cir. 1995). The employee in that case, Norman C. Girard, filed a charge

---

[9] The EEOC subsequently amended its regulations to extend the time limit from 30 days
to its current 45 days.

22

of discrimination against his employer, the Internal Revenue Service ("IRS"). The IRS denied it as untimely because the employee did not make contact with an EEO Counselor within thirty days of the discriminatory event. The EEOC reversed that finding and instructed the IRS to investigate the complaint. The IRS did not move for reconsideration or to reopen, but rather it complied with the EEOC's ruling and conducted an investigation (which resulted in a finding of no discrimination). The Ninth Circuit held in the ensuing civil action that because the EEOC's unappealed decision "was a final binding order on the IRS," the IRS could not come into court at a later stage and argue the same point; the court held that the IRS had waived its right to re-contest the timeliness issue. Id. at 1247; accord id. ("The EEOC made a final decision that Girard's complaint was timely. The effect of the decision was to waive the thirty-day filing requirement, and to require a determination of Girard's complaint on the merits. That decision was binding on the IRS.").

The Second and Ninth Circuits have thus held, on strikingly similar facts, that "a governmental agency defendant may not have 'a second bite at the apple' by arguing lack of timely filing in federal court after failing to challenge an EEOC determination that the complaint was timely filed." Briones, 101 F.3d at 291 (quoting Girard, 62 F.3d at 1247). They have concluded that "[f]ollowing a pre-investigation agency determination that a discrimination claim is untimely, an

23

unappealed final EEOC determination ruling the filing timely is binding on the parties and the court in a later-related Title VII action." Briones, 101 F.3d at 292; Girard, 62 F.3d at 1248 ("Once the EEOC determined that Girard was entitled to pursue his discrimination claims the IRS was not entitled to ask a court to hold otherwise. It was bound.").

Briones and Girard do not stand alone. Indeed, insofar as we can tell, the Circuit Courts that have considered the issue have uniformly held that when an agency finds that a complaint is timely, or when it fails to challenge an EEOC finding of timeliness, it waives any subsequent objection on timeliness grounds. See, e.g., Bruce v. United States Dep't of Justice, 314 F.3d 71, 74 (2d Cir. 2002) ("An agency waives a timeliness objection by . . . failing to appeal an EEOC determination of timeliness."); Munoz v. Aldridge, 894 F.2d 1489, 1495 (5th Cir. 1990) ("If an agency makes a specific finding during the administrative process that the administrative complaint was timely, it cannot later defend against a civil complaint by arguing that the administrative complaint was untimely.") (citing Henderson v. United States Veterans Admin., 790 F.2d 436, 441 (5th Cir. 1986) ("In this case, the agency fully investigated the timeliness of the complaint, and found a satisfactory reason for the delay. No more was required to fulfill the statutory prerequisites to suit, and the district court need not have reconsidered the

24

question of timeliness" as the agency cannot "simply raise[] an objection in court that was mooted by [an] earlier unmodified finding.")); see also Ward v. Califano, 443 F. Supp. 89, 90-91 & n.2 (D.D.C. 1977) (stating that defects caused by failure to contact EEO Counselor within 30 days "essentially become irrelevant" when agency finds the complaint to be untimely; that decision is reversed by the EEOC; the agency proceeds to investigate the claim; and the employee timely files a civil action); accord Grier v. Snow, 2006 WL 5440387, at *12 (N.D. Ga. Mar. 15, 2006) (holding on facts "nearly indistinguishable from those in Briones and Girard" that the agency's "binding determination regarding timeliness without objection from the IRS prevents the IRS from arguing that Grier's complaint was untimely in this Court"), aff'd, 206 F. App'x. 866 (11th Cir. Oct. 26, 2006).

We agree with and adopt the reasoning of the foregoing cases, particularly Briones and Girard. In doing so, we recognize that we have previously criticized a portion of the Girard decision in Ellis v. England, 432 F.3d 1321 (11th Cir. 2005). However, we did so only to the extent that Girard allowed "fragmented review" of an administrative decision. The plaintiff in Ellis argued that the EEOC's favorable finding on liability should not be reviewed de novo, but that he was "entitled to a de novo review (by a jury) [on] the question of damages." See id. at 1325. Girard allowed such review, but we did not (and do not) agree with Girard's analysis on

25

that point. See id.

That is not the situation here. Ramirez is not seeking fragmented review of the 2007 EEOC decision that denied his claims. To be sure, he is challenging and seeking de novo review of the entirety of that decision. What he is doing is asking that we enforce, as binding, the EEOC's earlier and unappealed procedural ruling on the timeliness of his initial contact with the EEO Counselor (from which all the "intertwined" claims in this case sprang). That ruling found that Ramirez's initial contact with the EEO Counselor in September 2003 was not untimely because --- and this was factually uncontested at the administrative level, at trial, and during this appeal --- there is no evidence in the record that Ramirez knew about the 45-day time limit at the outset of this matter.[10]

There is a sound rationale and logic in holding that if the EEOC determines that a discrimination claim is timely (or, at least, that there is a valid and adequate

---

[10] For example, as Ramirez notes in his brief, this is not the sort of case where there was evidence of prominently displayed signs or handbooks that informed employees of the 45-day rule. See Gaillard v. Shinseki, 349 F. App'x. 391, 392-93 (11th Cir. 2009) (employee had notice of 45-day rule where there was evidence of a poster on a bulletin board that described the 45-day time period for contacting an EEO Counselor); accord Harris v. Gonzales, 488 F.3d 442, 445 (D.C. Cir. 2007) (identifying "posters, employee handbooks, orientation sessions, etc." as the means by which a federal agency may put employees on notice of the 45-day rule); Bailey v. United States Postal Serv., 208 F.3d 652, 655 (8th Cir. 2000) (employer training program and poster displayed at workplace made employee aware of 45-day rule). The DOT has made no attempt in this case to argue that Ramirez knew or should have known about the 45-day rule. Indeed, it implicitly conceded in the briefing and at oral argument that he did not.

reason to excuse its untimeliness), and the agency then accepts that determination and proceeds to investigate and attempt conciliation of the claim, that should put the timing issue to rest. As the former Fifth Circuit noted in Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011 (5th Cir. 1971):

> The EEOC is the agency upon which the statute places the burden of determining whether a charge has been timely filed, so as to permit it to investigate and attempt to conciliate the charge in accordance with the statutory scheme. . . . Where the EEOC has once determined that a charge was timely . . . , and has actually entered into a conciliation attempt, it does not seem particularly in keeping with the congressional intent that the timeliness of the filing of the EEOC charge should be open to reconsideration by the court, when, often years or many months afterward, a suit is brought because conciliation has failed.

Id. at 1014 n.6.

Because the EEOC found that there was a satisfactory reason for Ramirez's delay in making initial contact with the EEO Counselor, and because the DOT did not challenge that finding, but, instead, undertook investigation and conciliation, the DOT and the district court were bound by the EEOC's finding. As our ruling on this issue is dispositive, we need not consider the other argument that Ramirez makes on appeal, see note 7, supra, as it concerns his alternative position that his

27

initial contact with the EEO Counselor was timely.[11]

## IV.

At bottom, this case involves a very familiar and oft-seen fact pattern: an unsuccessful job applicant brings a lawsuit against an employer, alleging that he was passed over for the position by lesser qualified people outside his protected class. While at first blush the case would seem to be simple and straightforward, upon closer review, as illustrated above, it is anything but. There are, inter alia, uncertainties and ambiguities about the two positions at issue; what was resolved at summary judgment; and what claim the jury was being called upon to decide. What is clear, however, is that it was error for the district court to rule as a matter of law on the DOT's mid-trial motion that Ramirez's administrative charge was untimely, given that the EEOC had previously determined it was timely.

As the Girard court noted: "When a government employee seeks to pursue a claim of discrimination under Title VII . . . the government cannot be at war with itself. Protean though it may sometimes be, it cannot in its EEOC form say that the

---

[11] To be clear, we emphasize once again that our decision is not based merely on the fact that the DOT processed and investigated Ramirez's discrimination complaint. As Briones and Girard (and several of the other cases cited above), have explained, it is one thing for an agency to accept a claim, conduct an investigation, and discover during the investigation that the claim is untimely. It is quite another thing for the agency to expressly find that the claim is timely (or be told by the EEOC that it is timely and not challenge that finding), investigate the claim, and then challenge (or re-challenge) timeliness months or years later in a civil litigation. There is no binding waiver in the former situation, but there is in the latter.

28

employee may go forward, while in [another] form it says he may not." Girard, 62 F.3d at 1248. Once the EEOC ruled that Ramirez could pursue his claim, and the DOT did not appeal that ruling, the DOT "was not entitled to ask a court to hold otherwise. It was bound." Id.

The district court's judgment is, therefore, REVERSED, and this matter is remanded for further proceedings.