[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10709
_____

D.C. Docket No. 5:16-cv-00654-WTH-PRL

CHARLES RIDDICK,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA, et al.,

Defendants - Appellees,

BUREAU OF PRISON,
FCC Coleman USP 1, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 21, 2020)

Before MARTIN, ROSENBAUM, and TALLMAN,[*] Circuit Judges.

MARTIN, Circuit Judge:

Charles Riddick is a federal prisoner who was formerly incarcerated at FCC Coleman. This is his appeal, which challenges two orders of the District Court. First, Riddick appeals the sua sponte dismissal of his Bivens[1] claims against the Warden, Associate Warden, and Health Services Administrator. He also appeals the District Court's order granting the government's motion to dismiss his Federal Tort Claims Act ("FTCA") and deliberate indifference claims against the United States and a member of the prison's medical staff, Rolando Newland, respectively. After careful consideration, and with the benefit of oral argument, we hold that the District Court erred by dismissing Riddick's complaint with prejudice.

## I.    BACKGROUND

Riddick alleged that, on September 26, 2013, while he was housed in the Special Housing Unit ("SHU") of FCC Coleman, his right ankle began bleeding. The SHU officer called for medical assistance, and Newland arrived and tried to stop the bleeding. Newland made "multiple tries" to stop the bleeding with a hyfrecator,[2] but all were unsuccessful. Newland then made sure Riddick was

---

[*] Honorable Richard C. Tallman, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971).

[2] A hyfrecator is a tool used to cauterize wounds.

2

transferred to an outside hospital for further treatment. Riddick was treated at Leesburg Regional Medical Center and returned to FCC Coleman the same day.

At Leesburg, Riddick was treated by Dr. Larry Johnson. "[I]mmediately" upon being seen, Johnson asked Riddick "who butchered your leg like this?" After Riddick responded, Johnson told the corrections officer who transported Riddick "to tell the Medical Department to do themselves a favor and keep that [hyfrecator] out of" Newland's hands, because "[h]e has no business using it." Johnson then diagnosed Riddick with a third degree burn on his right heel, and placed stitches to stop the bleeding on his ankle.

Upon returning to the prison, Riddick's transporting officer informed the FCC's Medical Department that Riddick "was instructed to keep [his] leg elevated as much as possible and NOT apply bandaids or ointments." In the months that followed, Riddick filed grievances for his suffering "continuing pain" from injuries inflicted by FCC Coleman's Medical Department for "improper treatment and medical care of receiving a 3rd degree burn." He received a response dismissing his grievances on the grounds that he had been evaluated and his "wound was subsequently cultured, cleansed and dressed." But Riddick points out that this treatment was "in direct contravention" of Johnson's instructions. On appeal, he characterizes his allegations as detailing "the many attempts made to report the poor medical treatment after he was burned," which evidence a "larger, more

3

systematic problem within the prison and medical department." See Br. of Appellant at 34–35.

Riddick, proceeding pro se,[3] filed suit on November 7, 2016, bringing three claims against several defendants. He claimed the government, the Federal Bureau of Prisons ("BOP"), Warden Tamyra Jarvis, Associate Warden G. Miller, Health Service Administrator C. Donta, and Newland were all liable under the FTCA for their inaction and their "negligent, wrongful acts" in failing to enforce policies and procedures that would have ensured Riddick received "adequate proper medical treatment and attention by [a] competent medical physician." Riddick also brought two Bivens claims. First, he claimed that Jarvis, Miller, and Donta (the "Supervisory Defendants") were liable for their subordinates' actions "by their indirect participation and/or failure to act" in allowing Newland to use the hyfrecator. Second, Riddick claimed that Newland's treatment resulted in a third degree burn to his right ankle, a permanent limp, and the need for present and future use of a cane, in violation of the Eighth Amendment. He seeks $250,000 in damages for each of his claims.

The District Court screened Riddick's complaint for frivolous claims under the Prison Litigation Reform Act of 1995 ("PLRA"). See 28 U.S.C. § 1915A(a). As a result, the District Court sua sponte dismissed Riddick's Bivens claim against

---

[3] Riddick is represented by counsel in this appeal.

4

the Supervisory Defendants.  The District Court found that Riddick failed to state this claim because he did not allege that the Supervisory Defendants "personally participated in any wrongdoing or that there was a causal connection between any of their actions and the alleged constitutional violations."

Instead of filing an answer to Riddick's complaint, Defendants filed a "Dispositive Motion to Dismiss" for lack of subject matter jurisdiction and for failure to state a claim.  First, they argued that Riddick failed to timely file his administrative claim, which they say required "outright" dismissal of his FTCA claims because the court therefore did not have subject matter jurisdiction.  Defendants said the BOP did not receive Riddick's administrative claim until November 3, 2015, which was five weeks after the limitations period ended.  They also argued Riddick was not entitled to equitable tolling of his administrative claim.  Second, Defendants argued that Riddick failed to state a claim against Newland for deliberate indifference because he alleged "nothing more than a simple negligence claim."

The District Court granted the motion to dismiss, finding that Riddick's FTCA claim was untimely and that he failed to state a <u>Bivens</u> claim against Newland.  Riddick timely appealed.

## II.    STANDARD OF REVIEW

We review de novo the District Court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.  Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016).  We accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  Id.  To state a claim, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  A complaint is facially plausible when there is sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  The plaintiff's allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65.

## III.    DISCUSSION

Riddick makes four arguments on appeal.  First, he says the District Court erred by failing to apply the prison-mailbox rule to his FTCA claim.  As a result, he argues that we should remand to the District Court to determine if Riddick is entitled to equitable tolling.  Second, he says he has alleged sufficient facts to show that Newland was deliberately indifferent.  Third, he argues that he properly asserted two theories of liability against the Supervisory Defendants.  Finally,

Riddick argues that the District Court erred by dismissing his complaint with prejudice and without giving him leave to amend.

## A. THE ISSUE OF WHETHER THE DISTRICT COURT ERRED BY FAILING TO APPLY THE PRISON-MAILBOX RULE IS NOT PROPERLY BEFORE US.

"The FTCA is a specific, congressional exception" to the government's sovereign immunity for tort claims. Turner ex rel. Turner v. United States, 514 F.3d 1194, 1200 (11th Cir. 2008) (quotation marks omitted). It allows the government to "be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government." Id. (quotation marks omitted). As is relevant here, FTCA claims are barred "unless the claimant first files an administrative claim with the appropriate agency within two years from the time the claim accrues." Id. (alteration adopted) (quotation marks omitted); see also 28 U.S.C. §§ 2675(a), 2401(b). An FTCA claim "shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95." 28 C.F.R. § 14.2(a).

Riddick's FTCA claim arose on September 26, 2013, the day Newland treated him. Under the FTCA's two-year limitations period, Riddick was required to present his administrative claim to the BOP by September 26, 2015. He failed to do so. Rather, the record shows that the BOP received his administrative filings several weeks after the September 26 deadline, on November 3, 2015. Attached to

7

Riddick's administrative claim was a memorandum from his counselor, dated October 21, 2015, explaining that the prison had been under lockdown from September 18, 2015 to October 8, 2015, and asking the BOP to "[p]lease accept this memorandum of understanding and allow the inmate to proceed with his legal issue." On this record, the District Court found that Riddick's FTCA claim was not timely. The District Court acknowledged that Riddick was under prison lockdown for twenty days and that his claim may be subject to equitable tolling. Nevertheless, the court ruled that even with equitable tolling, Riddick's claim "would still be untimely."

We therefore must determine if Riddick's FTCA claim is timely.

1. The Prison-Mailbox Rule

The parties' primary dispute here is whether the District Court should have applied the so-called prison-mailbox rule.[4]   However, the parties first dispute the standard of review that should be applied to this argument. The government claims that Riddick failed to raise the prison-mailbox rule before the District Court and therefore we must review it, if at all, for plain error.

---

[4] This is a rule that measures filing deadlines for prisoners from the date the prisoner delivers the document he intends to file to prison officials, as opposed to the date it arrives at its destination for filing. See Daniels v. United States, 809 F.3d 588, 589 (11th Cir. 2015) (per curiam).

Even if Riddick did not present his prison-mailbox rule argument to the

District Court, "[o]ur reluctance to consider waived legal arguments is merely a

rule of practice, . . . and is not absolute." Ramirez v. Sec'y, U.S. Dep't of Transp.,

686 F.3d 1239, 1250 (11th Cir. 2012) (quotation marks omitted). We may exercise

our discretion to decide the issue "if it involves a pure question of law, and refusal

to consider it would result in a miscarriage of justice." Id. (quotation marks

omitted). Whether the prison-mailbox rule applies to administrative filings under

the FTCA is purely a legal question. See Garvey v. Vaughn, 993 F.2d 776, 779 &

n.10 (11th Cir. 1993) (deciding the application of the prison-mailbox rule to

plaintiff's FTCA complaint and declining to address supplemental issues that "are

not purely questions of law"). However, because it is not clear from the record that

Riddick's filing would have been timely if the prison-mailbox rule applied, we find

that a miscarriage of justice will not result in this case. Therefore, we are required

to hold that the District Court did not err in finding that Riddick's FTCA claim, as

pled, was untimely.

## B. THE DISTRICT COURT APPLIED THE WRONG STANDARD IN DISMISSING RIDDICK'S DELIBERATE INDIFFERENCE CLAIM.

Riddick also challenges the District Court's dismissal of his claim against

Newland. The District Court found that Riddick failed to allege Newland was

deliberately indifferent to Riddick's serious medical needs in violation of the

9

Eighth Amendment.  Riddick says, to the contrary, that he did allege facts sufficient to show that Newland was deliberately indifferent.

Deliberate indifference claims have both an objective and a subjective component.  Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020).  The objective prong requires the prisoner to establish an objectively serious medical need.  Id.  The parties agree that Riddick's medical need was serious.[5] The subjective prong requires the prisoner to prove that prison officials "acted with deliberate indifference to that need by showing (1) that they had subjective knowledge of a risk of serious harm and (2) that they disregarded that risk (3) by conduct that was more than mere negligence."  Id. (quotation marks omitted) (alterations adopted).  The District Court's findings addressed the first and third elements of the subjective prong.  The District Court held that Riddick did not allege Newland (1) "had any subjective intent to harm" him or (2) that Newland's "conduct was more than negligence."  The District Court erred on both findings.

First, when the District Court required Riddick to allege that Newland subjectively intended to harm him, it applied the wrong standard.  The subjective prong of the deliberate indifference analysis requires only "subjective knowledge of a risk of serious harm"—not subjective intent to harm.  See, e.g., Dang ex rel.

---

[5] Neither do the parties dispute that Riddick properly alleged that Newland's indifference caused his injuries.

10

Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1280 (11th Cir. 2017).  Thus it

was not incumbent upon Riddick to show that Newland acted (or failed to act)

hoping (or believing) that harm would actually come to Riddick.  "[I]t is enough

that the official acted or failed to act despite his knowledge of a substantial risk of

serious harm."  Farmer v. Brennan, 511 U.S. 825, 842, 114 S. Ct. 1970, 1981

(1994).  We do not understand even the government to dispute that Riddick alleged

Newland had subjective knowledge of the risk of harm.  For example, the

government points to Riddick's allegations that Newland first tried to stop the

bleeding by cauterizing the wound, see Br. of Appellee at 29–30, thereby

indicating Newland knew the risk Riddick faced if the bleeding continued.

Riddick also properly alleged that Newland had subjective knowledge of the

risk that Newland would burn Riddick with the hyfrecator.  The government says

Riddick incorrectly "frames the 'risk of serious harm' as his bleeding ankle," when

Riddick needed to, but did not, allege that Newland was subjectively aware of "the

risk that the hyfrecator would burn" Riddick.  However, a candid assessment of

Riddick's pleadings causes us to reject this assertion.  The hyfrecator cauterizes

wounds.  Riddick alleged that Newland used the hyfrecator "to burn [the] wound

closed to stop the bleeding."  Newland's subjective knowledge of the risk the

hyfrecator would burn Riddick is implicit in this allegation.  The government

seems to want to draw an arbitrary line between a burn to cauterize a wound and a

11

burn made with the intent to harm.  But again, a subjective intent to harm is not what is required to state a deliberate indifference claim.

Second, in holding that Riddick failed to allege conduct more culpable than negligence, the District Court ruling mistakenly turned on Riddick's allegations that Newland failed "to act with reasonable care" and committed "medical malpractice."  The Supreme Court has recognized that the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for [an] imperfect statement of the legal theory supporting the claim asserted."  Johnson v. City of Shelby, 574 U.S. 10, 11, 135 S. Ct. 346, 346–47 (2014) (per curiam) (holding that plaintiffs were not required to invoke § 1983 in order to state a claim).  Riddick's complaint clearly alleged both "medical malpractice" and "cruel and unusual punishment," so it was error to credit one allegation at the exclusion of another, particularly given that Riddick was proceeding without counsel.  See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

On appeal, the parties dispute whether Riddick's complaint sufficiently alleged Newland's disregard of a serious risk and whether his conduct was more

12

than mere negligence.[6]  Because of the errors we have discussed, the District Court did not analyze these elements of the subjective prong in its order dismissing Riddick's complaint.  Because, as described below, Riddick is entitled to amend his complaint, we think it best to allow the District Court to address the parties' arguments on these elements in the first instance.  If the court finds that Riddick's complaint states a claim of deliberate indifference, it shall also determine whether Riddick's Eighth Amendment rights were clearly established.  See generally St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002) (explaining how qualified immunity applies when raised on a motion to dismiss).

C.  THE DISTRICT COURT ERRED BY DISMISSING RIDDICK'S COMPLAINT WITH PREJUDICE.

The District Court also erred by dismissing Riddick's complaint with prejudice.  "A district court's discretion to deny leave to amend a complaint is severely restricted by Fed. R. Civ. P. 15, which stresses that courts should freely give leave to amend when justice so requires."  Woldeab v. DeKalb Cnty. Bd. of Educ., 885 F.3d 1289, 1291 (11th Cir. 2018) (quotation marks omitted).

---

[6] As this Court recently discussed in Patel v. Lanier County, 969 F.3d 1173 (11th Cir. 2020), our precedent has said both that a deliberate indifference claim "requires proof of more than gross negligence," and "more than mere negligence."  Id. at 1188 n.10.  Patel opined, however, that "[t]hese competing articulations—'gross' vs. 'mere' negligence—may well represent a distinction without a difference because . . . the Supreme Court itself has likened the deliberate-indifference standard to 'subjective recklessness as used in the criminal law.'"  Id. (quoting Farmer, 511 U.S. at 839–40, 114 S. Ct. at 1980).  As a result, "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard."  Id.

Generally, a plaintiff proceeding pro se must receive at least one opportunity to amend the complaint if he or she might be able to state a claim by doing so. Id.; see also Silberman v. Miami Dade Transit, 927 F.3d 1123, 1132–33 (11th Cir. 2019) (noting that in some situations, further leniency—or "an extra dose of grace"—may be warranted "in recognition of the difficulty in proceeding pro se").

Any deficiencies in Riddick's complaint—on all three of his claims—"might be curable." Woldeab, 885 F.3d at 1291. First, as to his FTCA claim, although Riddick was not required to make any allegations about equitable tolling in his complaint, see Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 971 (11th Cir. 2016) (en banc), his counsel suggests that he could certainly do so. Therefore, it cannot be said that any attempt to amend would necessarily be futile with respect to Riddick's FTCA claim.

Second, the District Court made no finding that it would be futile for Riddick to replead his factual allegations related to his deliberate indifference claim against Newland. See Woldeab, 885 F.3d at 1291. And on this claim as well, Riddick's affidavit indicates that he could provide a "more carefully drafted complaint, which includes more specific allegations" against Newland. Id. at 1292. These more specific facts include that Newland "tried for at least an hour" to cauterize Riddick's wound. And these facts could help support the theory Riddick's counsel states on appeal: that Newland was unqualified to perform that

14

treatment because, as Riddick alleged in his complaint, the hyfrecator "did not stop the bleeding of the right ankle after making multiple tries." See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (reaffirming "that grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference"); see also Edmo v. Corizon, Inc., 935 F.3d 757, 793–94 (9th Cir. 2019) (holding that continued ineffective treatment plan "stopped short of what was medically necessary"); Cesal v. Moats, 851 F.3d 714, 723 (7th Cir. 2017) ("Continuing an ineffective treatment plan also may evidence deliberate indifference.").

Third, despite the District Court's holding that Riddick failed to state a Bivens claim against the Supervisory Defendants,[7] he should be entitled to amend that claim as well. The government claims that Riddick has not properly appealed his supervisory liability claim because it relates to claims against defendants who were dismissed before they were served in the District Court "in an order that Riddick did not appeal." This question is jurisdictional. See Hill v. BellSouth Telecomms., Inc., 364 F.3d 1308, 1313 (11th Cir. 2004). The government suggests that Riddick's appeal of his supervisory liability claim is improper under

---

[7] Based on the pleadings before the District Court we cannot disagree with its ruling that Riddick failed to state a Bivens claim against the Supervisory Defendants. However, in light of Riddick's right to amend his pleading, we decline to analyze the arguments presented by the parties here, based on the claim as originally presented.

15

the Federal Rules of Appellate Procedure because (1) he should have specifically referenced the sua sponte dismissal in his notice of appeal; (2) the Supervisory Defendants were not served in District Court; and (3) the Supervisory Defendants are not parties to this appeal.

A panel of this Court recently resolved an intracircuit conflict over the scope of our jurisdiction when a notice of appeal designates only the District Court's final order disposing of an action. Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co., 953 F.3d 707, 725 (11th Cir. 2020). Following our earliest precedent, see Barfield v. Brierton, 883 F.2d 923, 930 (11th Cir. 1989), Automotive Alignment explained that "when a notice of appeal designates the final, appealable order—and does not identify specific parts of that order for appeal—we have jurisdiction to review that order and any earlier interlocutory orders that produced the judgment." 953 F.3d at 724–25. That rule describes the procedural history of this case. Riddick filed his notice of appeal from the "decision in this case 2-1-2018"—that is, the District Court's final, appealable order dismissing his complaint with prejudice. He did not limit the scope of this appeal by "identify[ing] specific parts of that order." Id. at 725. Because the District Court's sua sponte dismissal order was not a final order "end[ing] the litigation on the merits and leav[ing] nothing for the court to do but execute the judgment," Love v. Wal-Mart Stores, Inc., 865 F.3d 1322, 1324–25 (11th Cir.

16

2017), "review of the final judgment opens for consideration" the prior sua sponte dismissal order, Barfield, 883 F.2d at 931. Therefore, we need not determine whether Riddick is entitled to a liberal interpretation of his notice of appeal for this Court to have jurisdiction over his supervisory liability claim. See Auto. Alignment, 953 F.3d at 724–25; Barfield, 883 F.2d at 930–31.

Satisfied of our jurisdiction, we briefly address why he is entitled to amend. Even though this claim was dismissed at the PLRA screening stage, this Court has held that the PLRA does not allow a district court to sua sponte dismiss a complaint without allowing leave to amend "when required by Fed. R. Civ. P. 15." Brown v. Johnson, 387 F.3d 1344, 1348 (11th Cir. 2004). The District Court dismissed the Supervisory Defendants because Riddick failed to state a claim against them in their supervisory capacity. Again here, the court did not hold that amendment of this claim would be futile. Because Rule 15 "stresses that courts should freely give leave to amend when justice so requires," and none of the exceptions to that rule apply here, we direct the District Court to allow Riddick to amend his complaint as to this claim as well. See Woldeab, 885 F.3d at 1291 (quotation marks omitted).

## IV.    CONCLUSION

We **REVERSE** the District Court's order dismissing Riddick's complaint with prejudice. We **REMAND** Riddick's case to the District Court with

instructions to allow Riddick to amend his complaint as to all three claims—the FTCA claim, the deliberate indifference claim against Newland, and the claim against the Supervisory Defendants. We express no opinion on the merits or the timeliness of Riddick's three claims.