[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13527
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cv-00051-CDL

CAREY A. FORTSON,

Plaintiff-Appellant,

versus

MICHELLE CARLSON,
Human Resources,
MELVIN DUTTON,
Manager,
ROBERT C. JOHNSON,
CEO,
COLUMBIA FARMS OF GEORGIA,
a.k.a. Columbia Farms Feed Mill,
BARRY CRONIC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(July 16, 2015)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff Carey Fortson sued his former employer, Columbia Farms of Georgia ("Columbia Farms"), and three members of its management, Michelle Carlson, Melvin Dutton, and Barry Cronic.  Fortson alleged claims of gender and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"); racially hostile work environment under 42 U.S.C. § 1981; and intentional infliction of emotional distress and negligent supervision under state law.  The district court dismissed Fortson's Title VII claims as time-barred and subsequently granted summary judgment to the defendants on his § 1981 and state-law claims.  Fortson now appeals.

After review, we affirm.

## I.  BACKGROUND

We describe the relevant events, viewing the evidence in the light most favorable to Fortson.

### A.    Harassment of Fortson

From January 2010 to June 2012, plaintiff Fortson, a 52-year-old African American man, worked as a dispatcher for defendant Columbia Farms in its feed mill.  Fortson processed customer orders for chicken feed and provided Columbia Farms truck drivers with delivery information for the orders.  Fortson generally

2

communicated with the truck drivers via radio, but the drivers sometimes entered the dispatch office and spoke to Fortson in person.

These truck drivers often directed rude or offensive language at dispatchers, usually out of frustration with their delivery assignments or a dispatcher's failure to have load paperwork ready on time. Fortson points to twelve incidents of harassment by truck drivers that occurred during his two-and-and-half years of employment with Columbia Farms. Nine of these comments involved racial epithets—specifically, "black ass" or "black ass fool." Fortson made contemporaneous notes concerning the following twelve instances of harassment.

On August 10, 2011, truck driver Kenny Allen called Fortson names and cursed at Fortson in person, saying, "Hey black ass hurry so I can get back and get another load." On August 12, 2011, driver Danny Young threatened Fortson when Fortson did not have his paperwork ready for a load. Young said to Fortson, in person, "I'll have your black ass taken care of[.] [Y]ou don't [know] me."

On August 19, 2011, driver Steve Andrews—who Fortson identified as a "bully" and his primary harasser—"threatened and cursed" at Fortson after Fortson did not have his load paperwork ready. Andrews said to Fortson, "I'll take your black ass across the track[,] buddy. You have my damn paper work ready."

On September 2, 2011, Andrews again "threatened" and "curs[ed]" at Fortson, stating, "I can have your black ass put away[,] buddy. Give me my damn

3

paper work." On September 8, 2011, Allen, apparently mad that he had received a long-haul assignment, cursed at Fortson and said, "You don't know me[.] I'll have your black ass fired."

On September 15, 2011, both Andrews and Young "scream[ed]" at Fortson to "hurry up" and get their paperwork ready. On September 30, 2011, Fortson noted that both "Andrews & Allen [were] cursing at [him]," in person, saying, "You are one dumb black ass taking up space for nothing."

On October 8, 2011, Andrews cursed at Fortson, "You sorry ass fuck[.] We need Brad[, a former dispatcher,] to come back to work." On October 14, 2011, Andrews said to Fortson, "You no good mother fucker. Your black ass need [sic] to be cleaning up the load out[,] not on the computer."

On January 12, 2012,[1] Andrews and Monte Wynn, another Columbia Farms trucker driver, called Fortson an "ass hole" and a "black ass fool." Andrews and Wynn were upset about their delivery assignments and wanted long-haul assignments that would yield more mileage pay.

---

[1]Fortson testified that there was about a three-month break in the harassment because Andrews, the main "instigat[or]," was out from work.

On January 18, 2012, Wynn "call[ed] [Fortson] names" and said, "I want to go to South Carolina[,] black ass[,] so that I can get a lot of miles." On February 3, 2012, Andrews and Wynn threatened Fortson, stating, "We will take you out."[2]

From February 3, 2012, through his June 27, 2012, discharge, Fortson did not experience any further harassment. Fortson attributed this to the fact that all but one of the truck drivers who had harassed him either quit or were fired.

**B.      Fortson's Reports of Harassment to Columbia Farms Management**

Although Fortson never filed any written complaints with Columbia Farms, Fortson testified that he complained verbally on multiple occasions to his shift supervisor, defendant Melvin Dutton.[3] Dutton told Fortson that he would "take care of it" but never did anything to stop the harassment.

In a declaration, supervisor Dutton admitted that "[r]ough or uncouth language was common at the feed mill." Dutton indicated that dispatchers often were the target of "rude or angry comments from drivers who were dissatisfied

---

[2]In the district court, Fortson also filed a questionnaire—purportedly filled out and signed by his primary harasser, Andrews—in which Andrews admits to harassing Fortson for "2 years[,] 3 months." Andrews further indicates that he heard other Columbia Farms coworkers "use[] racial epithets toward the Plaintiff . . . 50 Times." The district court, however, indicated that it would not consider the questionnaire because it contained hearsay, it was inconsistent with Fortson's own testimony that he was subjected to only nine racial epithets, and Fortson could not rely on conduct to which he was oblivious to show a hostile work environment. On appeal, Fortson does not challenge the district court's failure to consider the questionnaire, and thus, we too decline to consider it.

[3]In his declaration, defendant Dutton, on the other hand, stated that "Fortson never complained to [him] that anyone used egregiously offensive racial epithets while speaking to or at him." In his deposition, Dutton repeatedly denied that Fortson reported any harassment to him.

5

with the routes they were assigned or impatient to get their loads on the road." For example, when Dutton worked as a dispatcher before being promoted to a supervisor, Columbia Farms drivers often told Dutton to get his "white ass" in gear and "get their damn paperwork ready."

Fortson reported the harassment only to Dutton and not to any other members of Columbia Farms management. The record contains no evidence that either defendant Michelle Carlson, a Columbia Farms human resources manager, or defendant Barry Cronic, Columbia Farms's Chief Executive Officer, had any knowledge of the harassment.

In a declaration, defendant Carlson disputed several of the dates on which Fortson alleged that harassment occurred based on a review of time card records. Specifically, Carlson noted that several of the instances of harassment claimed by Fortson fell on days when either he or his alleged harasser did not work or did not work overlapping shifts. But, at this juncture, we must view the evidence in the light most favorable to Fortson.

## C.    Effect of Harassment on Fortson

The record contains no evidence that the alleged harassment suffered by Fortson interfered in any way with his job performance or affected his ability to perform his duties.

6

The only evidence of impact is on Fortson's personal relationships outside of work. In an affidavit, Lisa Rucker, Fortson's estranged wife, averred that the harassment Fortson suffered while employed at Columbia Farms caused Fortson great distress, led to the deterioration of their relationship, and ultimately resulted in their separation. Melesa Gary, Fortson's ex-girlfriend, testified that during her relationship with Fortson, the harassment Fortson experienced at work caused him to become depressed, changed his normally happy attitude, and made him become "more agitated" and "complain[] more."

## D.    Fortson's Termination

On June 21, 2012, another employee photographed Fortson sleeping while on duty. When questioned by management, Fortson admitted to sleeping on the job.

Columbia Farms's employee handbook—a copy of which Fortson admitted receiving upon starting with Columbia Farms—states that employees are prohibited from sleeping on the job. The handbook further provides that a violation of any of its terms could result in immediate termination.

After the sleeping incident on June 21, Columbia Farms initially suspended Fortson for three days pending further disciplinary action. Then, on June 27, 2012, Columbia Farms terminated Fortson.

## II.  DISCUSSION

## A.    Title VII Gender and Race Discrimination Claims

The district court did not err in dismissing Fortson's Title VII gender and race discrimination claims as time-barred.[4]  Fortson did not file his Equal Employment Opportunity Commission ("EEOC") charge until February 12, 2013, more than 180 days after his June 27, 2012 termination, the final adverse employment activity he suffered.  See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001); 42 U.S.C. § 2000e-5(e)(1) (requiring an employee in a non-deferral state such as Georgia to exhaust administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice).

In his initial appellate brief, Fortson argues, as he did in the district court, that his complaint was timely filed within 90 days of his EEOC right-to-sue letter. This argument is misplaced, however, because Fortson's Title VII claims are time-barred based on the late filing of his EEOC charge, not based on the timeliness of his complaint with respect to his right-to-sue letter.

Fortson also contends that his EEOC charge must have been timely because the EEOC issued him a right-to-sue letter and did not state that his EEOC charge

---

[4]We review de novo a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).

8

was untimely filed.[5]  The problem for Fortson is his EEOC letter does not address timeliness at all.  This is not a case where the EEOC affirmatively stated that the charge was timely.  Cf. Ramirez v. Sec'y, U.S. Dep't of Transp., 686 F.3d 1239, 1250-53 (11th Cir. 2012) (holding that where the EEOC affirmatively determines that a charge is timely filed, and a governmental agency defendant fails to challenge the EEOC finding of timeliness, the defendant and the district court are subsequently bound by that finding).  Rather, the EEOC letter does not address that issue and the district court thus did not err in addressing it.  Further, the district court correctly found that Fortson's EEOC charge was not timely filed within 180 days of his termination and therefore his Title VII claims are time-barred.

## B.    Section 1981 Racially Hostile Work Environment Claim

The district court also did not err in granting summary judgment to the defendant on Fortson's § 1981 racially hostile work environment claim.[6]  To establish a hostile work environment claim under § 1981, a plaintiff must prove that the "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

---

[5]Fortson raises this argument for the first time in his reply brief and thus the question arises whether this argument comes too late.  We need not address this issue because the argument fails in any event.

[6]We review a district court's grant of summary judgment de novo, viewing all evidence in the light most favorable to the non-moving party.  Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270 (11th Cir. 2011).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (quotations and citation omitted) (listing elements of Title VII claim); see Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002) (noting that Title VII and § 1981 hostile work environment claims have the same elements and are subject to the same analytical framework).

If the plaintiff bases his hostile work environment claim on race, he must prove five elements: (1) he belongs to a protected group; (2) he has been the subject of unwelcome harassment; (3) the harassment was based on his race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; and (5) the employer was responsible for such environment under a theory of vicarious or direct liability. Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1248-49 (11th Cir. 2014).

The fourth element requires a plaintiff to show that his work environment is both subjectively and objectively hostile. Id. at 1249. A plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive to alter the terms or conditions of his employment, while the objective severity of harassment is judged from the perspective of a reasonable person in the plaintiff's position. Id.

10

To evaluate whether a work environment is objectively hostile, the Supreme Court in Harris identified the following factors that we should consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and, (4) whether the conduct unreasonably interferes with the employee's job performance. Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris, 510 U.S. at 23, 114 S. Ct. at 371). Thus, "[i]n the light of these factors, we ask whether, under the totality of the circumstances, a reasonable person would find the harassing conduct severe or pervasive to alter the terms or conditions of the plaintiff's employment." Adams, 754 F.3d at 1251.

The Harris factors are not "a mathematically precise test," and no single Harris factor is required for a plaintiff to show the fourth element of his hostile work environment claim. See Harris, 510 U.S. at 23, 114 S. Ct. at 371. Instead, the inquiry into the objective severity of the harassment is fact intensive and involves a consideration of all of the circumstances. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc).

Here, the district court determined that Fortson's hostile work environment claim failed on the fourth element—that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment. See Adams, 754 F.3d at 1249.

Specifically, the district court concluded that Fortson failed to present evidence from which a reasonable jury could find that he experienced race-based harassment that was sufficiently severe or pervasive to alter the terms and conditions of his employment. Put differently, the district court found that Fortson failed to create a genuine issue of material fact as to whether his workplace was subjectively and objectively hostile. We agree.

As an initial matter, while Fortson raises on appeal the issue of whether the district court erred in granting summary judgment to the defendants on his hostile work environment claim, in his opening brief he fails to explicitly challenge, or even address, the district court's determination that he presented insufficient evidence as to the fourth element of his claim. Instead, he focuses on evidence and arguments that are largely irrelevant to the fourth element of his claim and the Harris factors. Thus, in failing to raise any argument as to the fourth element of his claim—the single element on which the district court found that his hostile work environment claim failed—Fortson arguably has abandoned this issue. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 682-83 (11th Cir. 2014). Fortson's reply brief more squarely addresses the fourth element of his claim, but we do not consider arguments raised for the first time in a reply brief. See id. at 683.

In any event, even assuming that Fortson's initial brief could be liberally construed to challenge the district court's finding that he failed to show the fourth element of his claim, we nonetheless affirm. A careful review of the record and an application of the Harris factors reveal that, under the totality of the circumstances, Fortson did not present evidence sufficient for a reasonable jury to find that his workplace was subjectively and objectively hostile.

As to the first two Harris factors, Fortson fails to raise a disputed issue concerning both the frequency and severity of the harassing conduct. Viewing the facts in the light most favorable to Fortson, he testified as to only twelve incidents of harassment spanning seven months of his two-and-a-half years of employment at Columbia Farms. And only nine of these incidents involved racially derogatory language—specifically, "black ass" or "black ass fool." While these slurs were patently offensive and disturbing, we cannot say that a reasonable jury could find the frequency of this harassing conduct to be sufficiently pervasive or severe over Fortson's period of employment. Cf. Adams, 754 F.3d at 1251-54 (concluding that plaintiffs raised a disputed issue that the harassment was frequent where they saw racist graffiti in the bathroom "every day" or "regularly," saw confederate flags "every morning" or "frequently," and heard racial slurs "every day"); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (finding sufficient trial evidence of frequent harassing conduct where coworker "hurled . . . ethnic

13

slurs at [plaintiff] three to four times a day"); Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) (finding that sexual harassment was severe and "not infrequent" where plaintiff "point[ed] to roughly fifteen separate instances of harassment over the course of four months" that included her supervisor giving her "unwanted massages, standing so close to [her] that his body parts touched her from behind, and pulling his pants tight to reveal the imprint of his private parts").[7]  While the severity issue is close, we must consider the context of the workplace and the crass language used between dispatchers and truck drivers at Columbia Farms.

As to the third Harris factor, Fortson did not present any evidence on which a reasonable jury could find that he was subjected to sufficiently physically threatening or humiliating harassment.  Although Fortson testified as to five arguably threatening statements by coworkers, two of the statements did not threaten physical violence.  Specifically, one coworker said he would have Fortson fired, while another coworker suggested that he could have Fortson imprisoned. The other three statements—that Fortson would be "taken care of," taken "across the track," and "taken out"—arguably could be construed as physically threatening.  However, these statements occurred on August 12, August 19, and

---

[7]In his reply brief, Fortson argues that he endured a number of more severe racial slurs, including the "n" word, but admits that he did not record these slurs on his notepad.  However, even assuming that we consider this argument, Fortson did not testify in his deposition that he was subjected to these alleged slurs.

14

February 3, respectively, and thus appear to be isolated and do not suggest an "escalation" of threatening incidents.  Cf. Jones v. UPS Ground Freight, 683 F.3d 1283, 1303-04 (11th Cir. 2012) (reasoning that plaintiff showed a genuine issue of material fact as to his hostile work environment claim where he endured "seven incidents of racist acts over a year, four of which . . . occurred within a two-week period of time near the end of [his] employment," suggesting an "escalation of incidents, with a possibly threatening confrontation as its centerpiece").

More importantly, we agree with the district court that the context of these statements is critical in considering whether they were physically threatening or humiliating, or were mere offensive utterances.  See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 77, 81-82, 118 S. Ct. 998, 1001, 1003 (1998) (explaining, in same-sex harassment case involving allegations of "sex-related, humiliating actions," a physical assault done in a "sexual manner," and a threat of rape, that "[i]n . . . all[] harassment cases, [the relevant] inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target").  Here, all of the harassing statements were made in the context of complaints about Fortson's job performance in an environment in which truck drivers regularly were rude to or angry with dispatchers, irrespective of race. For example, supervisor Dutton stated that, when he previously worked as a dispatcher, Columbia Farms drivers often told him to get his "white ass" in gear

15

and "get their damn paperwork ready."[8]  The district court put it aptly: "Fortson has painted a picture of an unsophisticated work environment where crude language was commonplace and good manners were absent.  But being subjected to crude, boorish behavior does not necessarily provide a disgruntled employee with a legal cause of action."

Finally, as to the fourth Harris factor, Fortson presented no evidence that the harassment in any way interfered with his job performance.  In particular, the record provides no indication that the harassment was at all related to his sleeping on the job, the undisputed reason for his termination.  Although no single Harris factor must be shown for a plaintiff to demonstrate a hostile work environment, see Harris, 510 U.S. at 23, 114 S. Ct. at 371, the complete lack of any evidence as to this factor weighs strongly against finding that Fortson presented sufficient evidence for a reasonable jury to find a hostile work environment.

In sum, considering the totality of the circumstances—especially in light of Fortson's failure on appeal to develop any real challenge to the district court's ruling on the fourth element of his claim—we cannot say that the district court erred in granting the defendants summary judgment on Fortson's hostile work environment claim.

---

[8]Fortson's reply brief agrees that "the record includes undisputed evidence that . . . Dutton was repeatedly called 'white ass' when he worked in [Fortson's] position."

**C.    Intentional Infliction of Emotional Distress and Negligent Supervision Claims**

Finally, the district court did not err in granting summary judgment to the defendants on Fortson's state-law claims of intentional infliction of emotional distress and negligent supervision.  In Georgia, to state a claim for intentional infliction of emotional distress, a plaintiff must show: (1) intentional or reckless conduct; (2) extreme or outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. Jarrard v. United Parcel Serv., Inc., 242 Ga. App. 58, 59, 529 S.E.2d 144, 146 (Ct. App. 2000).  Georgia case law defines extreme or outrageous conduct as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Yarbrough v. SAS Systems, Inc., 204 Ga. App. 428, 429, 419 S.E.2d 507, 509 (Ct. App. 1992).

Here, we agree with the district court that Fortson presented insufficient evidence to create a genuine issue of material fact as to both severe emotional distress and extreme or outrageous conduct.  First, although Fortson submitted evidence showing that the alleged harassment may have affected his mood and his personal relationships, he submitted no evidence suggesting he suffered extreme emotional distress.  See Bridges v. Winn-Dixie Atlanta, Inc., 176 Ga. App. 227,

17

230, 335 S.E.2d 445, 448 (Ct. App. 1985) (explaining that the distress inflicted must be so severe that no reasonable man could be expected to endure it).

Second, as the district court put it, the harassing comments that Fortson endured were "uncivil and rude" but were not so extreme as to go beyond all bounds of decency and be atrocious and intolerable.  Rather, Fortson's case is analogous to that of the plaintiff in Lockhart v. Marine Manufacturing Corporation, 281 Ga. App. 145, 635 S.E.2d 405 (Ct. App. 2006).  There, the Georgia Court of Appeals found that the "racist-laden and insulting comments" endured by the plaintiff did not support a claim for intentional infliction of emotional distress because, inter alia, "the comments did not originate from one person in a systematic effort to belittle and abuse [the plaintiff]," but "[i]nstead, . . . originated from different employees as reactions to particular work situations over a lengthy period of time."  Lockhart, 281 Ga. App. at 146-48, 635 S.E.2d at 406-07.  Here, too, the comments directed at Fortson were made as part of complaints concerning his job performance.  The comments were "insulting and degrading" but were insufficient to support a claim of intentional infliction of emotional distress.  See id. at 147, 635 S.E.2d at 407.[9]

### III.  CONCLUSION

[9]We also reject without further discussion Fortson's argument that the district court erred in granting the defendants summary judgment on his negligent supervision claim.  See Leo v. Waffle House, Inc., 298 Ga. App. 838, 841, 681 S.E.2d 258, 262 (Ct. App. 2009); Metro. Atlanta Rapid Transit Auth. v. Mosley, 280 Ga. App. 486, 489, 634 S.E.2d 466, 469 (2006).

For the above reasons, we find no reversible error in the district court's dismissal of Fortson's Title VII claims or its grant of summary judgment in favor of defendants on his § 1981 and state-law claims.[10]  Accordingly, we affirm the judgment.

**AFFIRMED.**

---

[10]On appeal, Fortson also attempts to raise a number of claims that were not properly raised before the district court, including claims of retaliatory discharge, disparate treatment, and fraud on the district court.  Because these claims were not properly raised before the district court, we do not consider them.  See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).